IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:24-cr-437-RAH |
| | ) | |
| QUEEN NAJA | ) | |

# ORDER

Defendant Queen Naja was charged on October 29, 2024, in an indictment with conspiracy to commit mail fraud in violation of 18 U.S.C. § 1349. (Doc. 1 at 1–2.) On March 10, 2025, Naja filed a *Motion to Suppress* (doc. 74) in which she sought the suppression of all statements and any information obtained during an interview conducted on September 24, 2024, at her residence. (Doc. 74 at 1.)

After holding a hearing on March 24, 2025, (*see* doc. 79), the Magistrate Judge recommended the Court deny the motion, (doc. 84 at 9). Upon an independent and *de novo* review of the record, including the transcript of the hearing, and for the reasons that follow, the Court adopts the Recommendation of the Magistrate Judge that Naja's motion to suppress be denied.

# STANDARD OF REVIEW

When a party objects to a Magistrate Judge's Report and Recommendation, the district court must review the disputed portions *de novo.* 28 U.S.C. § 636(b)(1). The district court "may accept, reject, or modify the recommended disposition;

receive further evidence; or resubmit the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). *De novo* review requires that the district court independently consider factual issues based on the record. *Jeffrey S. ex rel. Ernest S. v. State Bd. of Educ.*, 896 F.2d 507, 513 (11th Cir. 1990) (per curiam); *see also United States v. Opie*, 347 F. App'x 495, 499 n.1 (11th Cir. 2009) (per curiam). However, objections to the Magistrate Judge's Report and Recommendation must be sufficiently specific to warrant *de novo* review. *See Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006) (per curiam) (citation omitted). Otherwise, a Report and Recommendation is reviewed for clear error. *Id.* (citing *Diamond v. Colonial Life & Accident Ins.*, 416 F.3d 310, 315 (4th Cir. 2005)).

## **DISCUSSION**

The Magistrate Judge provided a thorough recitation of the facts in his Recommendation. Consequently, a summary of the facts related to the motion to suppress is unnecessary, as the Court adopts the Magistrate Judge's findings.

Naja asserts two Objections to the Recommendation: (1) the Magistrate Judge erred in determining that "Naja was not intoxicated at the time two [Internal Revenue Service] [('IRS')] agents encountered her and interviewed her" and (2) the Magistrate Judge erred in determining, under the totality of the circumstances, that Naja provided her statements voluntarily. (Doc. 85 at 1–2.) Both Objections relate to the voluntariness of Naja's statements.

In *Beckwith v. United States*, 425 U.S. 341, 343 (1976), the Supreme Court recognized "that noncustodial interrogation might possibly in some situations, by virtue of some special circumstances, be characterized as one where 'the behavior of . . . law enforcement officials was such as to overbear petitioner's will to resist and bring about confessions not freely self-determined.'" *Id.* (quoting *Rogers v. Richmond*, 365 U.S. 534, 544 (1961)). "When such a claim is raised, it is the duty of [the] Court, 'to examine the entire record and make an independent determination of the ultimate issue of voluntariness.'" *Id.* (quoting *Davis v. North Carolina*, 384 U.S. 737, 741–42 (1966)). In the Eleventh Circuit, "an examination of the totality of the circumstances is necessary to determine whether the [statement] was actually voluntarily given." *United States v. Lall*, 607 F.3d 1277, 1285 (11th Cir. 2010) (citation omitted). Importantly, for a statement to be admissible, it "must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight." *Id.* (quoting *Bram v. United States*, 168 U.S. 532, 542 (1897)).

Here, the Magistrate Judge correctly determined that Naja provided her statements voluntarily. Intoxication is a factor in considering the totality of the circumstances. *United States v. Harris*, 613 F. Supp. 2d 1290, 1301 (S.D. Ala. 2009) (citing *United States v. LeShore*, 543 F.3d 935, 940–41 (7th Cir. 2008)). While Naja argues that her statements were involuntary, in part, because the agents failed to

3

determine whether she was intoxicated, (doc. 85 at 1–2), there is no indication in the record of intoxication. Although IRS Special Agent David McDaniel testified at the hearing that there appeared be to a half-full glass of red wine covered in cellophane on the kitchen table where the interview occurred, (doc. 80 at 20), such testimony was the only evidence introduced by either party concerning alcohol. McDaniel also testified that he never saw Naja drink from the wine glass nor exhibit any signs of intoxication. (Doc. 80 at 21); *see Arvelo v. Sec'y, Fla' Dep't of Corr.*, 687 F. App'x 901, 906 (11th Cir. 2017) (per curiam) (stating that "a defendant's inebriated condition does not affect the voluntariness of his [statement] unless it undermines his ability to comprehend in a general way what he is doing and to communicate with coherence and context") (citation omitted).

As for the totality of the circumstances, they too indicate—as the Magistrate Judge correctly determined—that Naja provided her statement voluntarily. Before beginning the interview, McDaniel read the IRS's standard noncustodial rights warning to her. (Doc. 80 at 16.) It stated, in part, that (1) "I cannot compel you to answer any questions or to submit any information if such answers or information might tend to incriminate you in any way," (2) "anything which you say and any documents which you submit may be used against you in any criminal proceeding which may be undertaken," and (3) "you may, if you wish, seek the assistance of any attorney before responding." (*Id.* at 18.) McDaniel further testified that after

reading the rights to Naja, she stated that she understood and would speak with him and Special Agent Fiut. (*Id.*)

Importantly, in *Beckwith*, 425 U.S. at 343, the Supreme Court stated that where "a special agent of the [IRS], investing potential criminal income tax violations . . . interview[s] . . . a taxpayer, not in custody," such "a situation . . . simply does not present the elements which the Miranda Court found so inherently coercive as to require its holding." *Id.* at 341–42, 347. Similarly here, McDaniel visited Naja's home to interview her as part of an investigation related to the filing of false tax returns. (Doc. 80 at 4, 12.) He testified that Naja invited the agents into her home, and during the interview, "she was engaged," "asked a lot of questions," and "did a good job of explaining certain things that the general public wouldn't know." (*Id.* at 16, 24–25.) The interview lasted "[a]pproximately two and a half hours," and McDaniel described it as a "very courteous interview" where both Naja and McDaniel asked questions to one another. (*Id.* at 25.) Ultimately, the evidence in the record does not indicate that Naja was coerced or in any other way pressured before, during, or after the interview. Accordingly, because Naja participated in the interview voluntarily and free of coercion, her motion to suppress will be denied.

## CONCLUSION

For the reasons stated above, it is **ORDERED** as follows:

1. Defendant Queen Naja's Objections (doc. 85) are **OVERRULED**;

2. The Recommendation of the Magistrate Judge (doc. 84) is **ADOPTED**; and

3. Defendant Queen Naja's *Motion to Suppress* (doc. 74) is **DENIED**.

DONE, on this the 18th day of June 2025.

                   /s/ R. Austin Huffaker, Jr.
                   R. AUSTIN HUFFAKER, JR.
                   UNITED STATES DISTRICT JUDGE